IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

December 17, 1998

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| MALCOLM ELAM | ) | ANDERSON COUNTY |
| | ) | 03A01-9805-CV-00165 |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | HON. JAMES B. SCOTT, JR., |
| | ) | JUDGE |
| STEVEN R. SEIVERS, ESQ. | ) | |
| | ) | AFFIRMED IN PART; VACATED |
| Defendant-Appellee | ) | IN PART and REMANDED |

JERROLD L. BECKER and SAMUEL W. BROWN OF KNOXVILLE FOR APPELLANT

R. FRANKLIN NORTON, GEOFFREY D. KRESSIN and W. MITCHELL CRAMER OF
KNOXVILLE FOR APPELLEE

O P I N I O N

Goddard, P.J.

In this legal malpractice suit Malcolm Elam sues Steven R. Seivers, an attorney
who he had employed to prepare warranty and trust deeds on two separate pieces of property,
alleging that he was responsible for damages resulting to Mr. Elam in failing to record the trust
deeds. One tract is described as the Jonathan Lane property and the other as the Wainwright
Road property. The warranty deeds conveyed the two tracts to Terry R. Fowler and the trust
deeds conveyed them in trust to secure the purchase price owed Mr. Elam.

Mr. Elam's principal contention on appeal is that Mrs. Seivers, who was Mr. Seivers' secretary and was acting as his agent, agreed to record the instruments, but failed to do so, resulting in the loss of security as to the Jonathan Lane property when Mr. Fowler filed a petition for bankruptcy.

The chronology of events necessary to the resolution of this dispute are as follows:

1.      On or about August 22, 1995, while in the office of Mr. Seivers, Mr. Elam executed a warranty deed conveying the Jonathan Lane property to Mr. Fowler and Mr. Fowler executed a deed of trust to secure the purchase price.

2.      December 5, 1995, Mr. Fowler filed a voluntary petition for bankruptcy.

3.      On or about December 14, 1995, while in the office of Mr. Elam, Mr. Elam executed a warranty deed conveying the Wainwright Road property to Mr. Fowler and Mr. Fowler executed a trust deed securing the purchase price.

4.      August 12, 1996, Bankruptcy Judge approved Mr. Fowler's waiver of discharge.

5.      October 10, 1996, order of Bankruptcy Court confirming Trustee's interest in the Jonathan Lane property and denying Trustee's interest in the Wainwright Road property.

6.      September 20, 1997, sale of the Jonathan Lane property by Trustee in Bankruptcy.

The Trial Court was of the opinion that under the undisputed proof Mr. Seivers was not guilty of any malfeasance which would entitle Mr. Elam to recover. As a result he entered a summary judgment from which Mr. Elam appeals, raising the following issues:

I    The Trial Court erred in dismissing Appellant's action for legal malpractice on the ground that no contractual or other duty existed between the Appellant and the Appellee beyond the preparation and notarization of certain instruments by Appellee, where Appellee's legal secretary offered to record said instruments, and the Appellant agreed to same, and then the legal secretary subsequently failed to record said instruments.

II   The Trial Court erred in granting Appellee's Motion to Dismiss or in the Alternative Motion for Summary Judgment, as the parties disputed the existence of a contract for legal services between Appellant and Appellee, and the Affidavit of Appellee, wherein he opined that he had met the relevant standard of care, was irrelevant, as such Affidavit rendered an opinion assuming facts which were disputed between the parties.

The standard of review as to summary judgment is stated in the case of Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn.1993), as follows:

Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial.

It is undisputed that Mr. Seivers was not employed to formally close the transaction by recording the warranty deeds and trust deeds, and there is considerable proof that there was no understanding that Mr. Seivers or Mrs. Seivers would record the instrument. However, this proof is disputed by the discovery deposition of Mr. Elam, who testified relative to the Jonathan Lane property as follows:

Q    Can you recall the conversation you had with Mrs. Seivers at the time that you and Mr. Fowler were together?

3

A    I believe that was the time that I asked about the recording of the documents.

Q    This would be for the Jonathan property?

A    Yes.

Q    And you had a conversation with Kathy Seivers regarding the recording of the documents?

A    Yes.

Q    Was this sometime after the recordation of the documents -- excuse me -- after the execution of the documents?

A    Yes, it would have been.

Q    Would it possibly have been the same day?

A    Probably.

Q    Possibly?

A    Possibly.

Q    You can't recall, though?

A    No.

Q    Do you recall signing or executing the Jonathan property documents?

A    No.

Q    Do you recall whether Mr. Seivers, that is, Mr. Steve Seivers, was present when those documents were executed?

A    No.

Q    Do you recall whether Mr. Seivers was present when you had a conversation with Kathy Seivers regarding the recordation of those documents?

A    He was not there.

Q    What conversation then did you have with Kathy Seivers regarding the recordation of the documents.

A    I asked about recording, and she said, "No. We're there every day. There's no point in your going over there. You'll have to make a special trip."

Q    And anything else?

A No. That's it.

Q Did someone pay her for the recordation of the documents at that time?

A I don't know.

Q I apologize. I've heard what you recall as her end of the conversation. What was your end of the conversation?

A I asked the question about recording.

Q And the question was?

A "No, we're there every day."

Q You just said --

A "In the courthouse every day."

Q What was the question you asked Mrs. Seivers?

A "Should I record these documents, or can you take care of it?" And she said, "No, you don't record them."

We accordingly find that as to the Jonathan Lane property there is a material dispute of fact relative to an agreement to record the instruments and vacate the summary judgment entered with regard thereto.

As to the Wainwright Road property, there is tenuous proof from Mr. Fowler that he paid what he assumed was recording costs to Mrs. Seivers in connection with this property. However, as already noted, this property was never in the bankruptcy estate, and Mr. Elam did not lose this property as security for the purchase price. It would appear that Mr. Elam suffered no damages as a result of the failure to record the trust deed as to the Wainwright Road property, except, perhaps, attorney fees he might have incurred in opposing the bankruptcy petition. However, it would seem that he would have incurred practically the same attorney fees in opposing the Bankruptcy Trustee's position in connection with the Jonathan Lane Property. We are disinclined to disturb the Trial Court's grant of summary judgment insofar as it affects the Wainwright Road property.

5

For the foregoing reasons the judgment as to the Jonathan Lane property is vacated and as to the Wainwright Road property affirmed and the cause remanded for further proceedings not inconsistent with this opinion. Costs of appeal are adjudged one-half against Mr. Elam and his surety and one-half against Mr. Seivers.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


__(Not Participating)_____
Charles D. Susano, Jr., J.